CENTER FOR DISABILITY ACCESS
Dennis Price, Esq. SBN 279082
Amanda Seabock, Esq., SBN 289900
Elliott Montgomery, Esq., SBN 279451
100 Pine St., Ste 1250
San Francisco, CA 94111
(858) 375-7385; (888) 422-5191 fax
DennisP@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Andres Gomez**, | Case No: 4:21-cv-07852-YGR |
| Plaintiff, | **Plaintiff's Response to Motion for Reconsideration** |
| v. | Complaint Filed: October 6, 2021 |
| **Zackery Sperow**, | |
| Defendants. | Honorable Yvonne Gonzalez Rogers |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Procedural History

Plaintiff filed his Complaint alleging violations of the ADA on October 6, 2021. Dkt. 1. Defendant then moved to dismiss the Complaint on December 13, 2021, on the grounds that Plaintiff lacked standing because Defendant does not operate a brick-and-mortar facility and Plaintiff "could not possibly qualify for a loan." Memorandum page 4, Dkt. 13-1. In denying Defendant's motion, the Court concluded that it raised factual questions not appropriate for resolution on the pleadings and refrained from deciding the facts at this early stage of the case. Order, Dkt. 18, page 2. Defendant filed a Motion for Reconsideration on March 28, 2022, citing to *Gomez v. Gates Estates, Inc.*, Case Number: 3:21-cv-07147-SK. This brief is filed in response to the Court's March 29 Order directing briefing. Dkt. 21.

## II. Basis for jurisdiction

The Court's order draws attention to a Declaration Plaintiff submitted in *Gomez v. Gates*. There, Mr. Gomez also was suing a real estate agency in the Bay Area that lacked accessible elements. That court dismissed Gomez's claim for failure to state a claim due to Gomez's statement that he would not physically visit the business. This was in error.

Not only was this legal error not supported by *Robles v. Domino's Pizza, LLC,* 913 F.3d 898 (9th Cir. 2019), it represents a rejection of both the Ninth Circuit position on tester standing and the Department of Justice

position on accessibility of websites, which have been published since that decision.[1]

Defendant's suggestion that Mr. Gomez must intend to visit "as a customer" is *explicitly* rejected by *C.R. Educ. & Enf't Ctr. v. Hosp. Properties Tr.*, ("CREEC") 867 F.3d 1093 (9th Cir. 2017). *CREEC* provides that "'any person who is being subjected to discrimination on the basis of disability' may bring suit." *Id.* at 1102. Further, his motivations for patronizing the website have no relevance whatsoever to his standing. *Id.* at 1101.

As for the application of the ADA to websites, the DOJ has stated the importance of "understanding how to ensure that websites are accessible to people with disabilities." Department of Justice, *Justice Department Issues Web Accessibility Guidance Under the Americans with Disabilities Act*, https://www.justice.gov/opa/pr/justice-department-issues-web-accessibility-guidance-under-americans-disabilities-act (March 18, 2022). Going further, "[p]eople with disabilities deserve to have an equal opportunity to access the services, goods and programs provided by government and businesses, including when offered or communicated through websites." *Ibid*. In the full guidance, the DOJ explains that website compliance is necessary to ensure that communication with people with disabilities is as effective as communication with others. Department of Justice, *When the ADA Requires Web Content to be Accessible*, https://beta.ada.gov/web-guidance/#when-the-ada-requires-web-content-to-be-accessible (March 22, 2022).

---

[1] The *Gates* decision was not appealed for reasons unrelated to the merits of that court's particular order. However, it is not binding authority on this court, and this court should not follow the lead of *Gates* as the decision fails to comport with Ninth Circuit precedent on both standing and the breadth of the ADA.

1  Website barriers are specifically called out, such as poor color contrast, lack of text alternatives on images, inaccessible online forms, mouse-only navigation, and lack of captions on videos. Department of Justice, *Examples of Website Accessibility Barriers*, https://beta.ada.gov/web-guidance/#examples-of-website-accessibility-barriers. (March 22, 2022). The barriers complained of by Plaintiff in this case are included in this list. Complaint para. 18, Dkt. 1.

To the extent any Ninth Circuit precedent can be interpreted as the ADA not applying to websites, DOJ has unequivocally stated this is incorrect and that the ADA "intended for the ADA to keep pace with rapidly changing technology of our times." Department of Justice, *Web Accessibility for People with Disabilities is a Priority for the Department of Justice*, https://beta.ada.gov/web-guidance/#web-accessibility-for-people-with-disabilities-is-a-priority-for-the-department-of-justice. (March 22, 2022).

The DOJ's enforcement of the ADA reflects this position. In 2014, the DOJ reached a Settlement Agreement with Peapod, LLC, an online grocery delivery service, to address accessibility claims. Available online at https://www.ada.gov/peapod_sa.htm. In that Agreement, the DOJ stated that "[i]ndividuals who are deaf or hard of hearing cannot understand videos presented on the website because the captioning is inaccurate ... Because of such barriers, individuals with disabilities are unable to fully and equally access www.peapod.com for online grocery shopping." *Id*. at ¶4. Peapod was identified as the owner/operator of www.peapod.com and "a public accommodation subject to Title III of the ADA." *Id*. at ¶7.

Likewise, in 2018, the DOJ entered into a settlement agreement with Teachers Test Prep ("TTP"), an entity that provides online and in-person test preparation courses. Available online at https://www.ada.gov/ttp_sa.html. In that Agreement, the DOJ noted that

TTP "did not offer its online courses in a manner accessible to individuals with hearing disabilities[.]" *Id.* at ¶5. As part of the Settlement Agreement, TTP agreed to "ensure *all* of its online video content has captions." *Id.* at ¶9(c) (emphasis added). There was no exception made for videos of courses that were not also offered in-person, or even for videos that were provided solely for informational or marketing purposes.

Agency deference is necessary when there is ambiguity in the statute, and the Ninth Circuit in both *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000) and *Robles*, supra, recognized the lack of clarity in attempting to fashion a rule. The numerous methods various courts have used to apply the ADA's provisions to the internet demonstrates the lack of clarity. Given this, and the superseding language of the DOJ, agency deference is mandatory. *Kisor v. Wilkie*, 139 S.Ct. 2400, 2422 (2019) (confirming *Auer* deference remains); *Johnson v. Starbucks Corporation*, 17-02454 WHA, 2019 WL 1427435, *3 (March 29, 2019) (J. Alsup) (applying *Auer* deference to agency interpretation of the ADA).

It is therefore not necessary that an individual intend to visit the physical business in order to sue for lack of accessibility of the website. In fact, the seminal case on this issue in the Ninth Circuit, *Robles*, involved facts not terribly dissimilar to those alleged here. There, the plaintiff had zero intention to visit the physical location of Domino's, but instead was utilizing the website to obtain benefits without ever intending to physically visit the store. *Robles*, 913 F.3d 898 at 902. It is a skewering of the "nexus" concept to suggest that a website need only be compliant and offer benefits to patrons who intend to physically visit the business. This effectively makes accessibility an illusion. The internet is a boon for people with disabilities, providing access to goods and services previously unavailable to them.

In the case of Mr. Gomez, the digital version of the terrestrial services offered by Defendant are far superior as they can be read by his digital devices. Why would someone with significantly visual disabilities do with printed paper when he can have a digital version read to him audibly? It is simply immaterial if he has any intention to visit the physical location, all that matters is whether the benefit he wished to avail himself of was offered by a physical place of public accommodation.

### III. Conclusion

Plaintiff therefore asks that the court deny the Motion for Reconsideration.

Dated: April 12, 2022				CENTER FOR DISABILITY ACCESS

						By   /s/ Elliott Montgomery
						Elliott Montgomery
						Attorney for Plaintiff